# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

IRMA JEAN ROUTEN                                                                PLAINTIFF

v.                                NO. 4:15CV00705 JLH

DEXTER SUGGS, individually and in his
official capacity as Superintendent; and
LITTLE ROCK SCHOOL DISTRICT                             DEFENDANTS

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Irma Jean Routen sued Dexter Suggs in his individual and official capacities[1] and the Little Rock School District, alleging age and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, 42 U.S.C. § 1983, the Arkansas Civil Rights Act, Arkansas's age discrimination law. She also alleges violations of the Equal Pay Act and the Arkansas Teacher Fair Dismissal Act of 1983. On December 4, 2017, the parties appeared and announced ready for a trial to the Court.

Routen's Equal Pay Act claim is based on the disparity between her pay and that of Danny Fletcher. Her age and sex discrimination claims are based on action taken in 2014 that had the effect of reducing her pay.

Routen works for the Little Rock School District supporting fine arts in the elementary schools. She currently works under a 9.25-month Teacher's Contract with a primary responsibility listed as "TEACHER." (Def. Ex. 1 at 13). Routen has worked in the District since 1991 when she began as a teacher. In 2002, the District was awarded a grant that funded its elementary music

---

[1] At trial, plaintiff's counsel reported that the District accepted service on Suggs in his official capacity but that he had never been served in his individual capacity. Pursuant to Federal Rule of Civil Procedure 4(m), Routen's claims against Suggs in his individual capacity are dismissed without prejudice.

program. At least part of the grant was dedicated to paying the salary of an employee who would support fine arts in the elementary schools of the District. Dr. Danny Fletcher, the District's director of fine arts, chose Routen for that position. Routen was paid out of the grant funds until the grant expired in 2009. Thereafter, Routen continued performing the same duties as she had under the grant but was paid from the District's general fund.

Routen's job since 2002 has been to oversee the elementary fine arts program and provide support to elementary fine arts teachers of prekindergarten through Grade 5. (Document #60 at 13, Pl. Ex. 4). The elementary fine arts curriculum calls for each student to receive 40 minutes of instruction in music and 40 minutes of instruction in art once each week. In her role, Routen reported to and was evaluated by Fletcher until 2010. In 2010, Routen began reporting to Sadie Mitchell, the associate superintendent for elementary schools. Mitchell oversees the operation of elementary schools and elementary principals. The evidence is in conflict as to whether Routen still reports to Mitchell. Mitchell and other witnesses testified that Routen reported to her for no more than two years, after which Fletcher again became her supervisor. Routen testified that Mitchell continues to be her supervisor. Fletcher testified that it is unclear to whom Routen reports.[2]

Fletcher became the District's director of fine arts in 2001, and he remains in that position today. He works under an 11-month Teacher's Contract with a primary responsibility listed as "ADMINISTRATOR." (Def. Ex. 19). As the District's director of fine arts, Fletcher is the head of the fine arts program for all grades. Routen, however, is the person directly responsible for overseeing the elementary fine arts program, while Fletcher retains the direct responsibility for

---

[2] In her response to the defendants' request for admissions, Routen admitted that Fletcher was her direct supervisor at all relevant times. (Def. Ex. 41). Routen now moves to amend her pleadings and withdraw that admission. Document #57. The motion is granted.

overseeing the secondary school fine arts programs. The District's secondary fine arts curriculum includes approximately 160 course offerings, several Advanced Placement courses, and numerous off-campus activities, such as fine arts competitions and band participation at athletic events.

During the time period relevant to the issues in this case, Fletcher has been paid on the District's administrator's salary schedule, whereas Routen has been paid on the teacher's salary schedule. Fletcher holds an administrator's certificate; Routen does not. (Pl. Ex. 6). As an example of the disparity in pay, for the 2011-12 school year, Fletcher was paid a salary of $105,948.00, while Routen was paid a salary of $79,792.86. (Def. Ex. 1, 19). Fletcher receives an annual education stipend of $3,000; Routen receives $500. (Def. Ex. 20; Pl. Ex. 8, 11, 14). Fletcher receives a car stipend of $720; Routen receives no car stipend. (*Id.*)

For many years, the District has received desegregation payments from the State of Arkansas under a desegregation order issued by this Court. In 2013, the parties to the desegregation order agreed to a settlement that would phase out desegregation funding over a four-year period. The District would continue to receive approximately $37.3 million in desegregation funding until 2017. In 2018, the State will cease to pay desegregation funding to the District. In the 2013-14 school year, then-superintendent Dexter Suggs implemented a district-wide review of staffing and assignments. In order to address the impending loss of desegregation funds, the superintendent formed a committee to recommend staffing cuts and realignment. The District's human resource administrator, Robert Robinson, and associate superintendent for accountability, Dennis Glasgow, were members on this committee. The District's chief financial officer, Kelsey Bailey, also participated in the process of identifying appropriate means of reducing the budget through cuts and realignment of staff. Budget cuts were implemented in phases over three years, beginning with

3

employees who were not classroom teachers. According to Robinson, every District employee was impacted by the budget cuts over the three-year period. Robinson himself was eventually demoted from director to coordinator. Glasgow's position also was eventually eliminated and he retired.

In January 2014, as a part of the first phase of budget reductions, the superintendent notified the school board that he intended to eliminate the positions of four female directors, all of whom were older than 50 years of age: Karen DeJarnette, Wanda Huddle, Marion Woods, and Routen. (Pl. Ex. 10). DeJarnette was director of planning, research and evaluation. Huddle was senior director of curriculum instruction. Woods worked in professional development at the elementary level. These position eliminations were made at the recommendation of the committee.

Routen had been working under an 11-month contract. (Def. Ex. 1 at 7). Although Routen's position was eliminated, she was not terminated; rather, she was reassigned to a 9.25-month contract with the same duties. (Def. Ex. 1 at 9; Def. Ex. 10). Routen has been working under a 9.25-month contract ever since. (Def. Ex. 1). The effect was to reduce Routen's annual salary from, for example, $83,509.99 for the 2013-14 school year, to $70,634.60 for the 2014-15 school year. (Pl. Ex. 12, 13).

As comparators, Routen points to two younger female District employees who received pay increases during the same time-frame that the four directors had their positions eliminated. Sabrina Stout was a literary specialist and received a pay increase when her contract was increased from an 11-month to a 12-month contract. (Pl. Ex. 25, 27, 28). Danyell Cummings took on some of the duties of DeJarnette's former position but received no extra pay as a result of taking on those additional duties. However, her contract for the 2013-14 and 2014-15 school years was for 12 months each year, and she received what appears to be a step increase of almost $3,000 for the

4

2014-15 school year. (Pl. Ex. 29, 30). Stout was 39 years of age at the relevant time, while Cummings was 40.

Glasgow explained that he recommended eliminating Routen's position because he thought that Fletcher could assume the duties for the elementary fine arts program. (Def. Ex. 4). He explained that Routen's position was only created as a result of the grant that the District received in 2002. He believed that Fletcher had handled elementary fine arts before Routen was assigned to do so and that Fletcher could handle that responsibility again if Routen's position were eliminated. He also explained that while the District's fine arts program had two persons in support positions—Fletcher serving as director and Routen serving as coordinator assigned to the elementary schools—the science department had none. The State requires the District to test math, literacy, and science and to meet certain standards in these areas. The academic performances of schools in the State are judged by these test results. The thrust of Glasgow's testimony is that since the District employs no one to support the science curriculum, a subject on which the State mandates testing and judges academic performance, it could manage with only one person to support the fine arts, which is not a subject on which the State mandates testing or by which the State judges a school's academic performance.

Routen's claims fall into three categories: the Equal Pay Act claim, the discrimination claims on account of sex and age, and the Teacher Fair Dismissal Act claim.

As to the Equal Pay Act claim, Routen says that she and Fletcher perform substantially similar work, so her salary should be equal to his. "To establish an equal pay claim, a plaintiff must show by a preponderance of the evidence that (1) she was paid less than a male employed in the same establishment, (2) for equal work on jobs requiring equal skills, effort, and responsibility, (3)

5

which were performed under similar working conditions." *Hunter v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2012). That Fletcher was paid more than Routen is undisputed. The issue is whether Fletcher and Routen performed equal work.

Positions need not be identical to be considered equal. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 961 (8th Cir. 1995). Accordingly, the question of equal work "requires a practical judgment on the basis of all the facts and circumstances of a particular case." *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981). As directed by the statute, courts consider the skill, effort, and responsibility of the work in question. *Id.* When comparing the responsibility of each position, courts consider the degree of accountability required in performing a job. *Id.*

Routen has not shown that she and Fletcher perform work that requires equal responsibility. Fletcher, as head of the District's fine arts program, has greater responsibility than Routen does. *See Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 961 (8th Cir. 1995) (holding that although two employees performed the same type of work, work was not equal because one employee served as department head and held supervisory duties and the other employee lacked these responsibilities). Fletcher was the director of fine arts in 2002 and was the person who selected Routen for the grants director position. Although there is some confusion as to whether Fletcher currently supervises Routen, whether he currently supervises her does not change the outcome under the Equal Pay Act. Routen does not dispute that she directly reported to Fletcher from 2002 until 2010 and that Fletcher was responsible for evaluating her work. Nor does she contend that her job duties and responsibilities changed thereafter. Indeed, the evidence showed that after the grant expired she continued in the same duties, though her compensation thereafter came from general funds of the District. Fletcher

6

continues to be the head of the entire District's fine arts program, of which Routen is a part. Fletcher continues to be responsible for the budget of the District's entire fine arts program. Accountability for the District's fine arts program as a whole falls on Fletcher's shoulders, not Routen's.

Routen argues that their day-to-day work is substantially equivalent because she oversees the elementary program and Fletcher only oversees the secondary program. There is ample evidence that Fletcher exercised actual oversight over the entire fine arts program, including the elementary level. For example, when elementary principals had issues with the music or arts program, they contacted Fletcher. (Def. Ex. 34, 40). Routen, herself, went to Fletcher to request funding for an elementary fine arts event. (Def. Ex. 35). Additionally, Suggs consulted with Fletcher about the necessity of Routen's position, as did the current superintendent, Michael Poore. Even if Fletcher's work were restricted to the secondary fine arts program, overseeing secondary fine arts involves greater responsibility than overseeing elementary fine arts. The secondary fine arts program includes many more course offerings and after-hours activities, so it involves much greater complexity than the elementary fine arts program. Fletcher's work requires more responsibility than Routen's. The work of Fletcher and Routen is not equal under the act.

Routen also argues that the District and Suggs discriminated against her on account of her sex and age. These discrimination claims are premised on the adverse employment actions against her, Huddle, DeJarnette, and Woods. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Age Discrimination in Employment Act echoes Title VII's language and applies it to age. 29 U.S.C. § 623(a)(1). To make out a claim under either

7

of these acts, Routen bears the ultimate burden of persuading the Court that the District intentionally discriminated against her. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 801 (8th Cir. 1994) (applying *Burdine* to age discrimination claim).

Three points need to be made before addressing the evidence on Routen's age and sex discrimination claim. First, the plaintiff and defendants both assume that the *McDonnell Douglas* framework applies. That framework "is designed for pretrial management." *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 265 (7th Cir. 2003). Because all of the evidence has come in and the Court sits as the factfinder, the *McDonnell Douglas* framework drops out. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 1481-82, 75 L. Ed. 2d 403 (1983). At this stage, the Court must decide the ultimate question of whether the defendants discriminated against Routen within the meaning of the law. *Id*.

Second, although the ultimate question is the same under both acts, the Age Discrimination in Employment Act requires a higher showing of causation than status-based discrimination claims under Title VII. But-for causation is required for age discrimination claims, whereas a plaintiff need only show that the defendant had an unlawfully discriminatory motive, even if it had other lawful motives, under a Title VII sex discrimination claim. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2523, 186 L. Ed. 2d 503 (2013); *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed.2d 119 (2009).

Third, Routen's claims under Title VII and the Arkansas Civil Rights Act "are analyzed in the same manner." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000). Eighth Circuit cases note the parallel language of the statutes in holding that a single analysis is

appropriate. Arkansas's age discrimination law, Ark. Code Ann. § 21-3-203, parallels the federal age discrimination act's language, and so this Court will analyze the laws under a joint analysis. A joint analysis is also used for claims under 42 U.S.C. § 1983 and Title VII. *Humphries v. Pulaski Cty. Special Sch. Dist.*, 580 F.3d 688, 692 n.3 (8th Cir. 2009).

Routen's evidence of discrimination consists of a discriminatory comment that Huddle testified Suggs made and the adverse employment actions taken against the four female directors in light of other employment actions. These are taken in turn.

Huddle testified that at an administrative council meeting in November of 2013, Suggs discussed upcoming staffing reduction and indicated that he would replace older employees with younger ones and would gut the Instructional Resource Center, where most of the administrators who directed or supported various programs worked.[3] Routen introduced a copy of Huddle's notes from the meeting. (Pl. Ex. 39). Although Huddle testified that Glasgow was always at these meetings and would open the meetings and present the agenda, on cross-examination, she was unable to name a single person she knew to be in attendance when Suggs made the comment—not even Glasgow. It is also noteworthy that Huddle, along with the other three female directors, all appealed Suggs's decision to eliminate their positions to the school board and were all represented by an experienced civil rights attorney before the school board; yet, this discriminatory comment was never brought to the attention of the school board, so far as the record shows. Furthermore, the evidence established that Suggs did not personally select the positions to be eliminated. Rather, he adopted the recommendations of the committee formed to recommend budget cuts. No evidence suggests that the members of this committee acted from a discriminatory motive when they made

---

[3] Routen did not work at the Instructional Resource Center.

their recommendations. Huddle's testimony fails to show that the District's decision to eliminate Routen's 11-month position and reassign her to a 9.25-month position was motivated by her sex or that her age was a but-for cause of the decision.

As further evidence of discrimination, Routen also points to the disparate treatment between the four older, female directors and the two younger, female District employees, Stout and Cummings. The fact that these comparators are females, though, undercuts Routen's sex discrimination claim. That the District treated these female employees better than Routen indicates that her sex was not a motivating factor in its decisions.

As it relates to age discrimination, the fact that the positions of four, older female directors were adversely impacted, while the positions of two younger, female employees were not, does not prove that Routen's age was a but-for cause of the District's decision to reduce her contract from 11 months to 9.25 months. Both Stout and Cummings were assigned additional duties as a result of the budget reduction efforts and other actions. Cummings took over some of DeJarnette's duties but got no pay increase. Stout was a literary specialist whose pay was increased to compensate her for extra work during summer school, increased responsibilities due to restructuring of the reading program, additional work assigned to her when the position of another young, female employee was eliminated, and increased duties arising from new State regulations regarding dyslexia. The evidence does not show that Routen received less favorable treatment than Cummings or Stout because of her age.

Every District employee who testified at trial—including Cummins and Stout—was adversely impacted by the District's budget reduction efforts at some point during the three-year budget reduction process. The District was preparing to lose a large amount of funding. The

10

testimony at trial established that major staffing adjustments needed to be made in order for the District to manage its budget responsibly. Robinson and Glasgow, two District employees who sat on the committee that recommended staffing cuts to the superintendent, testified as to reasons for the staffing changes that were not based on age or sex. Glasgow testified that he recommended that Routen's position be eliminated and gave good reasons: Fletcher had handled the fine arts program for the entire district before the grant was received in 2002 and could do so again; and science, a subject used by the State to judge a school's academic performance, had no administrator supporting science, whereas fine arts, which is not a subject the State uses to judge a school's academic performance, had two support persons—a director for the District as a whole and a coordinator assigned specifically to the elementary schools. Kelsey Bailey, who also advised Suggs and the succeeding superintendents regarding budget cuts, testified that age and sex were never mentioned in any of the discussions of which positions to eliminate or reduce. The evidence proved that Suggs and subsequent superintendents adopted the recommendations of Bailey and the committee. Again, no evidence indicated that the persons who made the budget-cut recommendations were motivated by discriminatory animus. Routen has failed to prove that the defendants reduced her contract to 9.25 months on account of her sex or age.

Last is Routen's claim under the Arkansas Teacher Fair Dismissal Act. Routen presented no argument on this claim in her post-trial brief and has likely waived it. Even so, the defendants have not violated the act. The act requires the superintendent to give a teacher notice by May 1 of the contract year that he is recommending that the teacher's contract not be renewed. Ark. Code Ann. § 6-17-1506(a)(1). It also requires that a notice of nonrenewal be delivered to the teacher in person or mailed by certified mail to the teacher's residence. *Id.* § 6-17-1506(b)(2)(A). A teacher

whose contract is terminated or not renewed is entitled to appeal the decision to the board of directors of the school district. *Id.* § 6-17-1509. The evidence at trial showed that Suggs sent Routen by certified mail timely notice that her contract would not be renewed, (Def. Ex. 10), and that Routen requested and received a hearing before the school board (though, for reasons that were not explained at trial, she and her lawyer left the school board meeting before the board concluded the hearing). (Def. Ex. 16, 17). Routen has presented no evidence that the defendants violated the law.

## CONCLUSION

Fletcher and Routen do not perform equal work, so the fact that the District pays Fletcher more than Routen does not violate the Equal Pay Act. The District's adverse employment action in 2014 that resulted in Routen's pay being reduced was not motivated by her sex or caused by her age, so the District did not violate Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, or the corresponding provisions of Arkansas law. Nor did the District violate the Arkansas Teacher Fair Dismissal Act of 1983.

Every witness to address Routen's performance testified that she has done an excellent job with the elementary fine arts program in the Little Rock School District. She has won major awards and deservingly so. Nevertheless, the actions of the District about which she complains were not illegal. A judgment will be issued separately.

IT IS SO ORDERED this 12th day of January, 2018.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE